# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                Plaintiff,<br><br>v.<br><br>Pedro Velasquez-Reyes,<br><br>                Defendant. | No. CR 04-2312-TUC-RCC (JM)<br><br>**REPORT AND RECOMMENDATION** |

On March 31, 2005, Defendant Pedro Velasquez-Reyes filed a Motion to Dismiss Indictment [Docket No. 17]. Pursuant to the District Court's Order dated November 17, 2004, the motion was referred to Magistrate Judge Jacqueline Marshall for hearing and report and recommendation. Velasquez-Reyes' motion was heard by Magistrate Judge Marshall on January 9, 2006.[1] Velasquez-Reyes was present and represented by counsel. No testimony was presented and the Motion is submitted based on the pleadings and exhibits. Having considered the motion, the exhibits, and the arguments of counsel, the Magistrate Judge submits the following findings of fact and conclusions of law, and recommends that the

---

[1] By order dated January 6, 2005, this matter was stayed pending a determination of Velasquez-Reyes' mental competency to stand trial. *Docket No. 11.* As reflected in his report dated March 11, 2005, Barry Morenz, M.D., concluded that Velasquez-Reyes was unable to understand the pending proceedings and recommended the implementation of psychiatric evaluation and treatment. *Defendant's Exhibit R*, p. 7. By order dated May 5, 2005, this case was stayed pending Velasquez-Reyes' restoration of competency. *Docket No. 23*. On November 21, 2005, the Court received a Forensic Report from the Federal Medical Center indicating that Velasquez-Reyes was able to understand the nature and consequences of the proceedings. *Docket No. 41*. The hearing on the instant motion was then set for January 9, 2006. *Id.*

District Judge, after independent review of the record, deny the Motion to Dismiss Indictment.

## I. Findings of Fact

In his motion, Velasquez-Reyes seeks dismissal of the indictment on the basis that his previous removal from the United States violated his right to due process.[2] As such, he contends he is not subject to prosecution for a violation of § 1326(b)(2). The facts pertinent to the evaluation of Velasquez-Reyes' claim are set forth below.

Velasquez-Reyes is a citizen of Mexico. *Government's Exhibit 2,* p. 2. On September 15, 1996, Velasquez-Reyes was arrested by the San Francisco, California Police Department on charges of Assault with a Deadly Weapon and Second Degree Robbery. *Defendant's Exhibit A*. Subsequently, on September 18, 1996, Velasquez-Reyes was taken into custody by the Immigration and Naturalization Service ("INS") and was served with an Order to Show Cause and a Notice of Hearing (the "OSC and Notice"). *Defendant's Exhibit B*. The OSC and Notice informed him that the basis for deportation was that he had entered the country without inspection. *Id.* The OSC and Notice informed him that he was entitled to a hearing before an immigration judge, but did not provide a date or time for such a hearing. *Id.*

On September 18, 1996, Velasquez-Reyes was also provided a Notification to Alien of Conditions of Release or Detention, which set his bond in the amount of $25,000.00. *Defendant's Exhibit C*. On that same form, Velasquez-Reyes requested redetermination of the custody decision by an immigration judge. *Id.* On September 20, 1996, Velasquez-Reyes' bond was reduced to $3000.00. *Defendant's Exhibit D*. The bond amount was posted by Brenda Perez Vasquez and Velasquez-Reyes was released. *Id.*

---

[2]Velasquez-Reyes additionally alleged a violation of his rights under the Eighth Amendment of the United States Constitution. That allegation, however, was voluntarily withdrawn in his reply brief and at the hearing on the Motion to Dismiss. *Reply in Support of Motion to Dismiss*, p. 10; Tr. 3.

On February 19, 1997, Velasquez-Reyes, through counsel, entered a plea of guilty in the San Francisco Municipal Court to a felony charge of "Accessory to a Felony" in violation of the California Penal Code. *Defendant's Exhibit J*. On March 19, 1997, the San Francisco court imposed a sentence of five days in jail, with credit for time served, and three years probation. *Defendant's Exhibit K*.

On March 24, 1998, Velasquez-Reyes again was arrested in San Francisco, this time for "Sale of a Controlled Substance." *Defendant's Exhibit L*. As a result, on May 21, 1998, his probation on the 1997 Accessory to a Felony charge was terminated. *Defendant's Exhibit M*. Subsequently, on April 23, 1998, he entered into a plea agreement with the government on the drug charges and was sentenced to one year in jail followed by three years of probation. *Defendant's Exhibits G, N & O; Government's Exhibit 2*.

INS records reflect that Velasquez-Reyes "was given an opportunity to file for relief from deportation," but that, "[h]e breached his bond, failed to appear [at an initial hearing on February 27, 1997] and he was ordered deported to Mexico on May 14, 1999 . . . ." *Defendant's Exhibits E*. Velasquez-Reyes, who was in jail at the time, apparently did not receive notice of the May 1999 hearing and the deportation order was issued *in absentia*. *Defendant's Exhibit I*.

On July 15, 1999, the INS issued a Warrant of Removal/Deportation. *Defendant's Exhibit H*. Velasquez-Reyes was subsequently deported into Nogales, Mexico, on July 18, 2001. *Id.*

On July 30, 2002, Velasquez-Reyes again illegally entered the United States and was prosecuted in this District for illegal reentry after deportation. *See* CR 02-1462 TUC-RCC (JM). During that matter, the Court ordered a competency evaluation. On October 25, 2002, Sergio I. Martinez, Ph.D., examined Velasquez-Reyes. The evaluation reports that he has a borderline to low average range in areas of non-verbal functioning and a prorated Performance IQ of 76. *Government's Exhibit 2*, pp. 9-10. On December 2, 2002, after

reviewing the report, the District Court Judge found Velasquez-Reyes competent to proceed and accepted his guilty plea. *Id.*, p. 3.

In the instant matter, on October 21, 2004, Velasquez-Reyes was arrested at or near Nogales, Arizona, on immigration related charges. He was charged with Re-Entry After Deportation in violation of 8 U.S.C. § 1326, which was enhanced by 8 U.S.C. § 1326(b)(2) based on his previous removal on July 18, 2001 and on his 1997 (Accessory to a Felony) and 1998 (Sale of Controlled Substance) California convictions. *Id.* On January 13, 2005, the Court ordered another competency evaluation. *Defendant's Exhibit R*. He was diagnosed by Barry Morenz, M.D., as suffering from chronic paranoid schizophrenia and major depression. *Id.*, p. 5. He was also found to have borderline intellectual functioning. *Id.*, pp. 5-6. Dr. Morenz concluded that

> [a]t the current time Mr. Velasquez-Reyes appears to be psychotic and is suffering from a thought disorder that causes him to be unable to understand the proceedings presently pending against him and causes him to be unable to properly assist his counsel in his own defense.

*Id.*, p. 7. Dr. Morenz recommended that Velasquez-Reyes be sent to the appropriate federal facility for treatment and medication. *Id.* On May 5, 2005, the Court ordered that Velasquez-Reyes be sent to an appropriate federal medical facility to determine whether there was a substantial probability that Velasquez-Reyes' competency to stand trial could be restored in the foreseeable future. *Docket No. 23*. Six months later, on November 18, 2005, the Federal Medical Center in Butner, North Carolina, issued a Forensic Evaluation and a Certificate of Restoration of Competency to Stand Trial.

**II.    Conclusions of Law**

        **A.    Can Velasquez-Reyes Challenge the Indictment?**

On January 6, 2006, the Government filed a supplemental opposition to Velasquez-Reyes' Motion to Dismiss, arguing that Federal Rule of Criminal Procedure 12(b)(3)(B) does not provide a legal basis for the dismissal of the indictment. *Docket No. 50.* Relying on *United States v. Salman*, 378 F.3d 1266 (11th Cir. 2004), the Government asserts that "[t]he

Ninth Circuit held that there is no explicit authority to grant a pretrial judgment as a matter of law on the merits . . . ," and, therefore the Court "cannot grant a motion to dismiss an indictment as a matter of law based on stipulated or undisputed facts." *Government's Opposition*, p. 2. However, a review of *Salman* and Ninth Circuit decisions undermines the Government's position.

As a threshold matter, *Salman* is not, as the Government asserts, a case from the Ninth Circuit. Rather, it is a decision from the Eleventh Circuit in which the defendant was arrested under 18 U.S. C. § 922(g)(5)(A) for possessing a firearm while being an alien "illegally or unlawfully in the United States." The defendant filed a motion to dismiss the indictment, arguing that based on undisputed facts, he was not "illegally or unlawfully in the United States" as a matter of law at the time of his arrest. The district court agreed and dismissed the indictment. The Eleventh Circuit reversed, holding that "[b]y looking beyond the face of the indictment and ruling on the merits of the charges against Salman, the district court in effect granted summary judgment in favor of the defendant." *Id*. The *Salman* court relied upon Eleventh Circuit precedent, stating that "[t]here is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of sufficiency of the evidence." *Id.* at 1268 (quoting *United States v. Critzer,* 951 F.2d 306, 307 (11th Cir.1992)). The *Salman* court noted that the Sixth Circuit disagreed with its conclusion, but it stated that cases from three other circuits, including the Ninth Circuit, supported its conclusion. *See id.* at 1268 n. 5.

Further examination of *Salman* indicates that the relevant part of the decision was expressly rejected in *United States v. Yakou*, 428 F.3d 241, 247 (D.C. Cir. 2005) (noting that the holding in *Salman* was unique to the Eleventh Circuit), and *United States v. Flores*, 404 F.3d 320, 324-325 (5th Cir. 2005). However, the Ninth Circuit's treatment of criminal motions to dismiss is less straightforward. In *United States v. Jensen*, 93 F.3d 667 (9th Cir. 1996), the defendants were charged with sending an unseaworthy ship to sea in violation of 46 U.S.C. § 10908. *Id.* at 668-669. The defendants filed motions to dismiss contending

1  venue in the Western District of Washington was improper because, at the time the crimes
2  were allegedly committed, the unseaworthy vessel was in Alaskan waters or on the high seas.
3  *Id.* at 669.  The district court granted the motions based on documentary evidence provided
4  by the defendants as to the location of the vessels.  *Id.*  On appeal, the Ninth Circuit found
5  that the district court had erred in considering the documentary evidence submitted by the
6  defendants because "[a] defendant may not properly challenge an indictment, sufficient on
7  its face, on the ground that the allegations are not supported by adequate evidence."  *Id.*
8  (citations omitted).  Such a motion, the Appeals Court determined, would be tantamount to
9  a summary trial of the evidence and the district court "should not consider evidence not
10 appearing on the face of the indictment."  *Id.*

11       At first blush, *Jensen* appears to support the Government's position here.  There is no
12 dispute that the indictment is facially sufficient.  The Government has alleged the elements
13 required to support an indictment for the violation of section 1326: (1) the defendant is an
14 alien; (2) was previously deported; and (3) he thereafter reentered the United States without
15 permission.  *United States v. Meza-Soria,* 935 F.2d 166, 168 (9th Cir.1991).  The rule
16 described in *Jensen* suggests that these allegations, properly alleged, insulate the indictment
17 from dismissal.  The problem with this conclusion, however, is that it is obviously wrong:
18 the Ninth Circuit regularly reviews motions dismiss charges founded on section 1326 and
19 allows defendants to collaterally attack the underlying deportations in certain circumstances.
20 *See, e.g., United States v. Gonzalez*, 429 F.3d 1252, 1254 (9th Cir. 2005); *United States v.*
21 *Velasco-Medina,* 305 F.3d 839, 847 (9th Cir.2002) (motion to dismiss indictment under §
22 1326); *United States v. Gastelum-Almeida*, 298 F.3d 1167, 1173 (9th Cir. 2002).  The
23 distinguishing factor between *Jensen* and the section 1326 challenges is not readily apparent.
24 However, in the section 1326 cases, a predicate offense is alleged and the Constitution
25 therefore requires that a defendant charged under the section be permitted to collaterally
26 attack the removal order under the due process clause.  *United States v. Mendoza-Lopez*, 481
27 U.S. 828, 837-38 (1987).  As the Supreme Court declared in *Mendoza-Lopez*, "where a
28

determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative proceeding." *Id.* at 837-38 (emphasis omitted).

Congress effectively codified the holding of *Mendoza-Lopez* such that a collateral attack is expressly authorized under 8 U.S.C. § 1326(d). In pertinent part, that section provides:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) of this section or subsection (b) of this section unless the alien demonstrates that–
>
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). This section and the *Mendoza-Lopez* decision clearly establish the propriety of a motion to dismiss an indictment under section 1326 based on an alleged defect in the underlying deportation.

### B.    Can Velasquez-Reyes Collaterally Attack His Prior Deportation?

The Government alleges that Velasquez-Reyes cannot collaterally attack his prior deportation because he has not exhausted his administrative remedies as required under section 1326(d)(1). It notes that an alien who is "ordered deported *in absentia* may have that order rescinded upon the filing of a motion to reopen with the Immigration Judge '[a]t any time if the alien demonstrates that he or she was in federal or state custody and the failure to appear was through no fault of the alien.'" *Response*, p. 4 (quoting 8 C.F.R. § 1003.23(b)(4)(iii)(2)). In response, Velasquez-Reyes asserts that his mental condition prevented him from pursuing the available remedies and, citing *Udd v. Massanari*, 245 F.3d 1096 (9th Cir. 2001), contends that his condition provides a basis for reopening his prior deportation case. *Reply in Support of Motion to Dismiss*, pp. 5-9. It thus appears that

administrative remedies remain available to Velasquez-Reyes and a collateral attack on his prior deportation is unavailable under section 1326(d)(1).[3]

There are exceptions to the exhaustion requirement. The exhaustion requirement does not apply where there is a constitutional challenge to the immigration laws or the procedures implementing the law. *Rashtabadi v. INS*, 23 F.3d 1562, 1567 (9th Cir. 1994). Under this exception, to successfully collaterally attack the underlying deportation order as "fundamentally unfair," Velasquez-Reyes must show a due process violation in connection with that proceeding and that he can plausibly argue that he suffered prejudice as a result. *United States v. Arrieta*, 226 F.3d 1076, 1079 (9th Cir. 2000); *United States v. Proa-Tovar*, 975 F.2d 392 (9th Cir. 1992). Velasquez-Reyes has offered evidence of a potential due process violation in relation to his deportation. However, he has not offered a plausible argument that he suffered prejudice as a result.

The Due Process Clause protects aliens in deportation proceedings and includes the right to a full and fair hearing as well as notice of that hearing. *Landon v. Plasencia* 459 U.S. 21, 32-33 (1982). An alien does not have to actually receive notice of a deportation hearing in order to satisfy due process requirements. Due process is satisfied if service is conducted in a manner "reasonably calculated" to ensure that notice reaches the alien. *See Farhoud v. INS*, 122 F.3d 794, 796 (9th Cir. 1997) (citations omitted). Here, Velasquez-Reyes alleges that his due process rights were violated because the OSC and Notice did not advise him of the time and date of his deportation hearing. He notes that the section designated to provide that information is blank. *Defendant's Exhibit B*. The Government does not dispute this assertion and has not provided any evidence that Velasquez-Reyes received notice of the February 27, 1997 or May 14, 1999 hearings which resulted in his deportation. As such, he has established the necessary due process violation.

---

[3] As of the date of the hearing on the Motion to Dismiss, Velasquez-Reyes had not sought to re-open his deportation proceedings. Tr. 13-14.

Velasquez-Reyes also contends that his mental illness rendered him unable to meaningfully participate in his deportation proceedings and resulted in a due process violation. *Motion*, pp. 6-10. However, even when an alien is not competent to participate intelligently in his deportation proceedings, such proceedings may still satisfy due process requirements. *See Nee Hae Wong v. INS,* 550 F.2d 521, 522 (9th Cir.1977). The Ninth Circuit has distinguished deportation proceedings from criminal proceedings, holding that "the full trappings of procedural protections that are accorded criminal defendants are not necessarily constitutionally required for deportation proceedings." *Id.* at 523. As discussed above, however, Velasquez-Reyes did not receive notice and, therefore, did not participate in his deportation hearings. As such, the effect his mental illness had on his ability to participate intelligently in the proceeding cannot be evaluated.

Even though Velasquez-Reyes can establish a due process violation, *Proa-Tovar* and *Arrieta* require a plausible showing of prejudice. "To establish prejudice, [a defendant] does not have to show that he actually would have been granted relief. Instead, he must only show that he had a 'plausible' ground for relief from deportation." *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004). Toward this end, Velasquez-Reyes highlights the fact that he requested a redetermination of his bond amount and that the Immigration Judge in his case reduced his bond from $25,000 to $3000. *See Defendant's Exhibits C & D*. Velasquez-Reyes asserts that "[t]he Immigration Judge would not have reduced [his] bond from $25,000 to $3,000 if he did not have a 'plausible ground for [relief]." *Motion*, p. 10; Tr. 6-8 ("The only thing I have to present for the Court's consideration, is that the . . . immigration judge reduced the bond from $25,000 to $3,000."). However, Velasquez-Reyes does not offer any indication of what that "plausible ground" may have been. Standing alone, the reduction of his bond is not the sort of evidence that constitutes a plausible ground for relief. *See generally Ubaldo-Figueroa*, 364 F.3d at 1050-51 (finding plausible ground for discretionary relief from deportation under former Immigration and Nationality Act section 212(c)); *United States v. Arrieta*, 224 F.3d 1076, 1082-83 (9th Cir. 2000) (finding plausible

9

1 ground for INA § 212 waiver of removal); *United States v. Jimenez-Marmolejo*, 104 F.3d 1083, 1085 (9th Cir. 1996) (finding plausible ground for relief where the alien's entire family lived in the United States and the alien suffered from borderline retardation). As a result, he has not established the potential prejudice necessary to support relief.

Without showing a plausible ground for relief, Velasquez-Reyes is left only to argue that the due process violation standing alone should merit the rejection of his underlying deportation as a sufficient predicate offense to support the current charges against him. A similar contention was discussed in the dissenting opinion of Judge Ferguson in *United States v. Leon-Leon*, 35 F.3d 1428 (9th Cir. 1994). In *Leon-Leon*, which was an appeal from conviction under 8 U.S.C. § 1326(b)(2), the court determined that the defendant's due process rights had been violated during his prior deportation hearing. However, the conviction was nevertheless affirmed because the court concluded, as is the case here, that the defendant was required to establish prejudice resulting from the violation and had failed to do so. *Id.* at 1431-32.

In dissent, Judge Ferguson disagreed with the majority's determination that prejudice necessarily was required to mount a successful collateral attack on a prior deportation hearing. *Id.* at 1433. Reviewing the facts underlying Leon-Leon's previous deportation hearing, Judge Ferguson noted that the hearing was

> without any evidence that he consented to not being physically present. Other than the preliminary questions, the judge's questions were not translated into Spanish, making it impossible for the appellant to participate or even understand what was happening.

*Id.* at 1434. Judge Ferguson characterized these facts as constituting "structural defects that affected the very framework within which the hearing proceeded." *Id.* The error in the hearing not being discreet but permeating the hearing itself, Judge Ferguson would have held that such error could not be subjected to harmless error analysis. *Id.* Thus, he would have held that the prior deportation order should not have been used to prove an element of Leon-Leon's § 1326 violation. *Id.*

Although compelling, Judge Ferguson's dissent does not constitute authority upon which this court can rely in evaluating Velasquez-Reyes' claims. The majority opinion in *Leon-Leon* clearly requires that, before relief can be granted, the defendant must establish that prejudice resulted from any due process violation found in an underlying deportation hearing. Here, Velasquez-Reyes has failed to offer any evidence of prejudice and, even assuming that a due process violation occurred, he would not be entitled to relief.

### C.     Can Velasquez-Reyes Collaterally Attack His Prior Convictions?

Velasquez-Reyes also contends that the indictment must be dismissed because the predicate state aggravated felony convictions were constitutionally defective. The transcripts of both the 1997 and 1998 changes of plea in the state court proceeding do not reflect any consideration of his mental competency. *Defendant's Exhibits J & N.* Velasquez-Reyes, relying on *Godinez v. Moran*, 509 U.S. 389 (1993), asserts that this omission violated due process and places the accuracy of the convictions in doubt. *Motion*, pp. 7-9.

In *Godinez*, the Supreme Court concluded that the competency standard for pleading guilty or for waiving the right to trial is the same as the competency standard for standing trial. *Id.* at 398. However, even if Velasquez-Reyes were able to establish that the trial court had "sufficient doubt of his competence" and nevertheless accepted his pleas, *see, e.g., Drope v. Missouri*, 420 U.S. 162, 180 (1975), he would not be entitled to relief under *Godinez*. This is because the Ninth Circuit has held that, in relation to reviewing a challenge to a conviction under 8 U.S.C. § 1326, "the Constitution requires only that collateral attacks in illegal re-entry after deportation proceedings be allowed on convictions obtained in violation of the right to counsel." *United States v. Gutierrez-Cervantez*, 132 F.3d 460, 462 (9th Cir. 1997). As it is apparent from the transcripts related to the California convictions, Velasquez-Reyes' was provided counsel in both cases. As such, neither of Velasquez-Reyes' claims collaterally

attacking his prior convictions raise Sixth Amendment claims, he is not entitled to relief under the *Gutierrez-Cervantez* decision.[4]

### III. Recommendation

The Magistrate Judge recommends that the District Court, after its independent review of the record, enter an Order **denying** Defendant Pedro Velasquez-Reyes' Motion to Dismiss Indictment [Docket No. 17].

This Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

However, the parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the District Court. *See* 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure. Thereafter, the parties have ten (10) days within which to file a response to the objections. Failure to timely file objections to any factual or legal determination of the Magistrate Judge may be considered a waiver of a party's right to *de novo* consideration of the issues. *See United States v. Reyna-Tapia* 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*). If objections are filed, they should bear the following case designation: **CR 04-2312-TUC-RCC.**

DATED this 26th day of January, 2006.

_Jacqueline Marshall_
Jacqueline Marshall
United States Magistrate Judge

---

[4]This is not to suggest that Velasquez-Reyes had no federal remedy for the alleged defects in the California proceedings. The proper procedure for raising these claims in federal court requires the filing of a petition for habeas corpus pursuant to 28 U.S.C. § 2254. *See, e.g., Godinez*, 509 U.S. at 393-94.